UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL J. BALDASSARIO,          \*
                        Plaintiff,   \*
                                     \*       CIVIL ACTION No. 3:03-CV-308 (MRK)
                                     \*
        v.                           \*
                                     \*
                                     \*       JANUARY 29, 2004
SECURITY SERVICES OF                 \*
        CONNECTICUT, INC.,           \*
                        Defendant.   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


# DEFENDANT'S  MEMORANDUM  OF  LAW
# IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


PROCEDURAL STATUS OF THIS CASE

Plaintiff filed a one count Complaint alleging a violation of the Age Discrimination in Employment Act ("ADEA") arising from his separation from Defendant's employ. The Complaint was filed with the Clerk on February 21, 2003 and formally served upon Defendant, Security Services of Connecticut, Inc. ("SSC"), through its counsel, on March 24, 2003.

Defendant filed its Answer on May 12, 2003 and the Report of the Parties' Planning Meeting followed shortly thereafter on or about May 21, 2003.

Both parties have conducted discovery within the time limitations set down by

the Court in its scheduling order.

SSC now brings forth a motion for summary judgment filed simultaneously herewith.  This memorandum is filed in support of that motion.

FACTS

SSC is engaged in providing uniformed guard security services, investigative services, security for computers, networks and other high technology applications, and related services.  SSC is arranged along functional lines with a uniformed security division, an investigations division, and other business divisions for the remaining business areas. Burbage Affidavit ¶3.  At all times material in this matter, SSC's uniformed security division was organized into two regions: Hartford and Bridgeport/White Plains. Burbage Affidavit at ¶10.

Plaintiff, Michael J. Baldassario, first came to be employed by SSC when it acquired another security operation where he worked. Baldassario 18-19.[1]  Plaintiff has been employed by SSC ever since.  His most recent position was area manager for the uniformed security division.  He was assigned to the Hartford district and oversaw the uniformed security operations in that district.  Burbage Affidavit ¶4.

_____

[1]
    References to the transcript pages of Plaintiff's deposition will be referred to in this way.  References to exhibits identified by him at his deposition will be noted as MBX - __ .

In the uniformed security division SSC stations uniformed security officers at client sites away from its office. Burbage Affidavit ¶5. For the most part, these security officers are overseen by field inspectors, formerly known as field supervisors, who circulate among all of the sites in an assigned area. Burbage Affidavit ¶6.

As area manager, Plaintiff had a job description which he identified at his deposition as being accurate and not having any omissions. Baldassario 28 at lines 21-23, 28-29, MBX-3. Field inspectors report to the area manager. To describe the overall sweep of his additional duties briefly, however, it is adequate to say that as area manager Plaintiff took care of client contact. He was in charge of managing the client account and resolving any issues or problems which arose. Baldassario 46-47, 51.

There is one other of Baldassario's duties which warrants mentioning. He trains new security officers. Baldassario 58-59. During these training sessions he advises new officers of SSC's non-discrimination policy. Cautioning that if they come to know of any discriminatory conduct they must report it; if they engage in any discriminatory conduct the may be terminated for it. Baldassario 59. He also noted that SSC's policy on non-discrimination is posted in SSC's office. Baldassario at 58. Baldassario specifically noted that SSC's policies prohibited age discrimination. Baldassario 59 at lines 14-21.

In February, 2002 there were two field inspectors who reported to Baldassario as area manager: Bombry and Griffin. Baldassario 31. This work team had been

consistent for some time, at least in its numbers.  Griffin was hired to replace a former field inspector, Jauni, who had been terminated on Baldassario's recommendation. Baldassario 32-33; 35.

Prior to his hiring Griffin was interviewed by Baldassario and recommended for the position.  Baldassario 34.  Griffin was to be trained by Baldassario.  Baldassario 35; Griffin Affidavit at ¶3.  Griffin was to report to Baldassario.  Baldassario 35; Griffin Affidavit at ¶3.  At the time of Griffin's hiring, Baldassario made certain that Griffin knew he would be assigned to weekend work, Griffin Affidavit at ¶3; Linsky Affidavit at ¶14, Exhibit A.

The functions of the field inspectors are also set forth in a detailed job description, MBX - 4, which Baldassario identified as being correct and complete. Baldassario 36-37.

This was the nature of Baldassario's work, and his working environment, as an area manager in the Spring, 2002.  Whether or not Baldassario knew, however, SSC's uniformed security division operations were struggling economically during that period.

In the late Spring of 2002 it became apparent that SSC would have to make some adjustment in its business operations.  There were several reasons supporting this conclusion.  First, the uniformed security division was under increasing competition and was not profitable, Burbage Affidavit ¶9; Linsky Affidavit at ¶5.  There had been several mergers and acquisitions causing an industry consolidation and giving rise to

stronger competitors attacking SSC. Burbage Affidavit ¶9.

Second, in Spring, 2002 SSC's insurance coverages were rising sharply. In or about March, 2002 SSC received notice that its contribution rate for unemployment compensation would rise from 0.5% to 1.8%. On an annualized basis, the impact of this increase was that unemployment insurance costs would rise from $52,767.70 to $189,961.90, an increase of $137,194.70 or 260.00%. Linsky Affidavit at ¶3.

Further, in April, 2002 SSC received increases in its workers compensation, general liability and umbrella insurance policies. This package increased as follows:

|      |          |
|------|----------|
| 2000 | $305,173 |
| 2001 | 566,311  |
| 2002 | 961,210  |

This is an increase of $656,037 over three years, or 214.97% for the period. For SSC the uniformed security division is the most labor intensive of all of its divisions and the largest contributor driving up insurance costs. Linsky Affidavit at ¶4.

In addition to the lack of profitability and the increased insurance costs, the clear trend was that SSC's uniformed security division was losing business in the Hartford district. Mr. Burbage has prepared a tabulation, showing that during the period January 1, 2000 to July 31, 2002 the Hartford district experienced a net decline of more than 750 guard hours worked per week. On an annualized basis, this is a revenue decline in excess of $500,000. Burbage Affidavit at ¶10.

The owners of SSC, a closely held corporation, discussed these trends with David Linsky, then President and CEO of SSC during the Spring, 2002.  Mr. Linsky is also an owner.  He decided, and all of the owners concluded, that SSC should begin to attempt to shift the focus of its business from the high cost, low margin uniformed security division to higher profit areas, such as investigations and technology.  He also determined that SSC should attempt to cut costs in SSC's uniformed security division. Linsky Affidavit at ¶6.

As a first step the investigations division was relocated to Hartford .  Then a new head of the investigation division was hired, as was a new sales manager.  Linsky Affidavit at ¶7.

During the same time period of Spring, 2002, Messrs. Linsky and Burbage  had a discussion.  Mr. Burbage was then first vice-president with his duties concentrated on the uniformed security division.  Mr. Linsky was President and CEO with responsibilities for all of SSC's operations.  Mr. Linsky asked Burbage to prepare a recommendation for the uniformed security division to address both cost-savings and business trends.  Burbage Affidavit at ¶11.

On Monday, July 1, 2002 Mr. Burbage presented his recommendations to Mr. Linsky. The recommendation was for a net reduction of three positions in the uniformed security division, specifically including the elimination of the position of Hartford area manager.  Mr. Burbage documented his recommendation with a one page summary

-6-

memorandum which titled "Talking Paper," a copy of which is attached to his affidavit as Exhibit B.  Burbage Affidavit at ¶13.

In late July 2002 Plaintiff was on vacation.  He was informed of the decision to lay him off when he returned to work, on or about July 30, 2002.  Baldassario at 67-68; Burbage Affidavit at ¶¶14, 17.  Although the recommendation to lay-off Plaintiff had been made by Mr. Burbage, Mr. Linsky wanted to inform Plaintiff personally.  Burbage Affidavit at ¶15.

At the time when he was informed of his lay-off, Plaintiff also was informed that SSC would continue to pay his base salary until he found new employment. Baldassario at 68;  Burbage Affidavit at ¶18; Linsky Affidavit at ¶11.  He also was informed that he could continue to use SSC's facilities. Baldassario at 72; Burbage Affidavit at ¶18; Linsky Affidavit at ¶11.

Following Plaintiff's lay-off, SSC managers contacted Murphy Security, a competitor, in an ultimately successful effort to assist Plaintiff in gaining new employment. Baldassario at 72; Burbage Affidavit at ¶19; Linsky Affidavit at ¶12. SSC managers wrote letters of recommendation for Plaintiff.  Baldassario at 69, 70-71; MBX 6; Burbage Affidavit at ¶19; Linsky Affidavit at ¶12, and provided Plaintiff with information concerning open positions in the Hartford area so as to assist Plaintiff with his job search. Baldassario at 68-69; Burbage Affidavit at ¶19; Linsky Affidavit at ¶12.

Plaintiff's position, which was eliminated, has not been reinstated.  It remains

unfilled and inactive to this day.  Burbage Affidavit at ¶17.  Plaintiff's duties were re-distributed to the Hartford district manager and other area managers.  Burbage Affidavit at ¶21.

Eric Griffin did not replace Mr. Baldassario, nor did he assume Baldassario's duties.  Burbage Affidavit at ¶¶13, 20; Griffin Affidavit at ¶5.  Mr. Griffin was hired as a field inspector to replace an individual in that same position who had earlier left employment.  Baldassario at 35.  Mr. Griffin continues to work as a field inspector to this day.  Griffin Affidavit at ¶5.