UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
****************************************
MICHAEL J. BALDASSARIO,          *
                    Plaintiff,   *
                                 *    CIVIL ACTION No. 3:03-CV-308 (MRK)
                                 *
         v.                      *
                                 *
                                 *    JANUARY 29, 2004
                                 *
SECURITY SERVICES OF             *
    CONNECTICUT, INC.,           *
                    Defendant.   *
****************************************
```

## AFFIDAVIT OF LOUISE LINSKY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Louise Linsky, being duly sworn, depose and state as follows:

1. I am over 21 years of age and I believe in the obligations of an oath.

2. I am the Corporate Secretary and a co-owner of Security Services of Connecticut, Inc. ("SSC"). I have responsibility for personnel administration, accounting and finance for SSC, although I carry out my duties in regular and frequent consultation with all of the owners of this closely held company.

3. In Spring, 2002 I saw with alarm that premiums for SSC's insurance coverages were rising sharply. In or about March, 2002 I received notice that our contribution rate for unemployment compensation would rise from the 2001 rate of 0.5% to 1.8%. On an annualized basis, that meant that our unemployment insurance

costs would rise from $52,767.70 to $189,961.90, an increase of $137,194.70 or 260.00%.

 4. Then in April, 2002 SSC received premium notices for its workers compensation, general liability and umbrella insurance policies. Our federal income tax records show that this package of insurance coverages has increased as follows:

   2000   $305,173

   2001     566,311

   2002     961,210

This is an increase of $656,037 over three years, or 214.97% for the period. For SSC the uniformed security division is the most labor intensive of all of our divisions and the largest contributor driving up insurance costs.

 5. Further, the uniform security division was not turning a profit in the late Spring, 2002. It had become apparent that SSC would have to make some adjustment in its business operations.

 6. I discussed these trends with David Linsky, then President and CEO of SSC during the Spring, 2002. He decided, and all of the owners concluded, that we should attempt to shift the focus of SSC's business from the high cost, low margin uniformed security division to higher profit areas, such as investigations and technology. He also determined that we should attempt to cut costs in SSC's uniformed security division.

7. As part of this effort, several changes were made in the investigations division. The division was relocated from Bridgeport to Hartford so as to increase its geographic scope and access to the insurance industry. A new head of the investigation division was hired, as was a new sales manager for that division.

8. Mr. Burbage, then first vice-president of SSC with responsibility for the uniformed security division was asked to propose a reorganization of the uniformed security division which would address our concerns.

9. Mr. Burbage did present recommendations which included a net reduction of three positions in the uniform security division, including the elimination of the position of Hartford area manager. These recommendations were accepted, implemented and changes in assignments and distribution of tasks were made as necessary.

10. Mr. Baldassario's age was not considered in any manner in reaching these decisions.

11. Following this separation, SSC told Plaintiff that it would continue to pay his base salary until he found new employment.

12. Following his separation SSC invited Mr. Baldassario to continue to use its office facilities; provided him with computer generated job search materials; provided positive letters of recommendation; and contacted Murphy Security on Mr. Baldassario's behalf in an effort to assist him in securing new employment.

13. Eric Griffin did not replace Mr. Baldassario, nor did he assume Baldassario's duties. Mr. Griffin was hired as a field inspector to replace an individual in that same position who had earlier left employment. Mr. Griffin continues to work as a field inspector to this day.

14. At the time of Mr. Griffin's hiring, he was provided with, among other documents, an employment contract. This contract, which notes that Griffin reported to Baldassario and would regularly work weekends was countersigned by Mr. Baldassario who had interviewed Griffin before he was hired. A copy of the employment contract is attached hereto and made a part hereof, having been marked as Exhibit A.

15. Mr. Baldassario previously filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities. SSC explained its actions and the reasons for them at that time. Mr. Baldassario's allegations were dismissed. Under those circumstances, and without any new or further proof, I do not understand how this litigation could have been brought with reasonable cause to believe that it was meritorious. A copy of the final agency finding are attached hereto and made a part hereof, having been marked as Exhibit B.

I have read the foregoing affidavit and I swear that it is true to the best of my knowledge and belief, so help me God.

_____
Louise Linsky

Subscribed and sworn to before
me this      day of January, 2004.

_____
Notary Public

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served this 29th day of January, 2002 upon the following by first class post, postage pre-paid:

Igor Sikorsky, Esq.
P. O. Box 38
Unionville, CT 06085

_____
Peter E. Gillespie